**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Arliss Siebeck, *et al.*,

Plaintiffs,

v.

Juan Gonzales, *et al.*,

Defendants.

No. CV-25-04996-PHX-JJT

**ORDER**

At issue is Defendant City of Glendale's ("Defendant") Partial Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Strike (Doc. 29, "MTD"), which the other Defendants in this action joined (Docs. 30, 34), and to which Plaintiff Arliss Siebeck filed a Response (Doc. 33, "Resp."), and Defendant filed a Reply (Doc. 41, "Rep."). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court will dismiss Count 6 of the First Amended Complaint with leave to amend to the extent it relies on Defendant's failure to train, supervise, and discipline GPD officers on their duty to intervene and to the extent it relies on GPD officers' alleged custom or practice of failing to intervene. The Court will deny the Motion in all other respects.

## I. BACKGROUND

Plaintiff is the brother of Dillon Siebeck (hereinafter "Siebeck") and the personal representative of Siebeck's estate. (Doc. 18, First Amended Complaint ("FAC") ¶ 8.) On January 8, 2025, at approximately 7:00 p.m., Glendale Police Department (hereinafter

"GPD") officers were attempting to locate 23-year-old Angelo Diaz (hereinafter "Diaz") in relation to a domestic violence incident. (FAC ¶ 12.) GPD officers located a vehicle matching Diaz's vehicle description at Horizon Park in Glendale, Arizona. (FAC ¶ 13.) GPD officers believed they saw movement in the vehicle but could not confirm due to the vehicle's tinted windows. (FAC ¶ 16.) GPD officers instructed the occupant to exit the vehicle but received no response from the potential occupant. (FAC ¶¶ 17–18.)

Without further investigation into the vehicle, GPD officers turned their attention to a man sitting on the picnic tables in the park; this man was Siebeck. (FAC ¶¶ 19–20.) Siebeck did not resemble Diaz, as Siebeck was twice Diaz's age, not Hispanic, and wearing a black hoodie and dark pants, in contrast to the description GPD officers received about Diaz, who allegedly was wearing a camouflage hoodie and white or light shorts. (FAC ¶¶ 21–22.) Despite this, GPD officers turned their attention from the vehicle to Siebeck. (FAC ¶ 24.) GPD officers took cover behind their police vehicles, approximately 300 feet from Siebeck, and pointed their firearms at Siebeck. (FAC ¶ 26.) Defendant Juan Gonzales was among the GPD officers who set up to confront Siebeck and had an assault rifle pointed at Siebeck. (FAC ¶¶ 25–26.) Defendant Joshua Anderkin was the Sergeant leading the team of GPD officers confronting Siebeck. (FAC ¶ 25.)

Anderkin, using a PA system from behind the police vehicles, instructed "Angelo" to put his hands up and walk towards the GPD officers. (FAC ¶ 27.) Siebeck, who was unarmed, began complying with Anderkin's instructions. (FAC ¶¶ 28–29.) No other individuals were near Siebeck; the closest people to him were the GPD officers behind their police vehicles. (FAC ¶ 29.) As Anderkin was giving Siebeck instructions, Gonzales fired two shots at Siebeck without warning. (FAC ¶ 30.) After this volley of shots, Anderkin gave no further instructions to Siebeck, nor did Anderkin instruct Gonzales to stand down, ask him why he shot, or escort him off the scene. (FAC ¶¶ 33, 36.) Fourteen seconds after the first volley of shots, Gonzales shot at Siebeck two more times. (FAC ¶ 37.) At least one of these second volley of shots struck Siebeck, which eventually resulted in his death. (FAC ¶ 37.) No other GPD officer used force against Siebeck. (FAC ¶ 39.)

Anderkin later told an investigator: "[b]ased on my perception of the event, based on my experience, what I was observing was not providing justification for lethal force." (FAC ¶ 35.)

Plaintiff alleges "a documented pattern and practice of excessive force" by the GPD. (FAC ¶ 62.) The alleged incidents are listed in a section of the FAC labeled "History of Excessive Force by GPD." (*See* FAC ¶ 62.) These incidents are summarized below:

- On February 23, 2015, GPD Officer Baldomero is alleged to have shot Anthony Baker in the leg "without justification after raising his hands." (FAC ¶ 63.)
- In 2016, an officer with the GPD allegedly shot into a vehicle multiple times during a "vehicle containment," striking Stephen Ross 15 times and killing him instead of Ross' twin brother. (FAC ¶ 64.)
- On July 27, 2017, GPD Officer Matthew Schneider "dragged" Johnny Wheatcroft from a car that allegedly improperly used its turn signal and tased him ten times. (FAC ¶ 66.) It is further alleged that while Wheatcroft was handcuffed and lying face down on the asphalt with another GPD officer kneeling on Wheatcroft's back, Officer Schneider "kicked Wheatcroft in the groin." (FAC ¶ 66.) Officer Schneider is alleged to have then tased Wheatcroft in his testicles absent any justification. (FAC ¶ 67.)
- The FAC also alleges that prior to the July 17, 2017 incident, Defendant disciplined Officer Schneider at least six times. (FAC ¶ 68.) Subsequent to the incident, Officer Schneider was criminally charged for his conduct in the incident. (FAC ¶ 69.) The actions of Officer Schneider are alleged to have prompted an FBI probe into the GPD. (FAC ¶ 70.) A lawsuit against Defendant arising out of this incident was allegedly settled in 2022. (FAC ¶ 71.)
- On March 6, 2018, GPD Officers allegedly "slammed" Robert Greer into a golf cart, kneeled on his back, and pepper sprayed him while he was recording an encounter between GPD officers and Greer's son. (FAC ¶ 72.) The FAC alleges Greer

subsequently sued Defendant over this incident and the parties settled in 2019. (FAC ¶ 74.)

- On July 1, 2017, GPD Officer Elkhannoussi is alleged to have shot Patrick Sanchez three times in the back of Sanchez's head while two other GPD Officers restrained him. (FAC ¶ 75.)
- The FAC alleges that on or about December 2018 James Hurst was stopped by two GPD Officers and was tased in the chest without justification by GPD Sargent Aaron Aldrige after Hurst put his hands in the air. (FAC ¶¶ 76–77.)
- The FAC alleges that on or about March 2019, GPD Officer Matthew Salyers received a thirty-hour suspension after "repeatedly striking an unnamed man in the face during a traffic stop without justification." (FAC ¶ 78.)
- GPD Officer Joshua Carroll allegedly dragged David Dulaney from a car after Dulaney informed Officer Carroll he had a disability. (FAC ¶¶ 79–80.) Officer Carroll is then alleged to have "shoved" Dulaney's face into the pavement and struck him in the back of his head with a taser, allegedly without justification. (FAC ¶ 80.) The FAC further alleges that Dulaney was arrested without any resistance, after which point Officer Carroll "dragged or threw" Dulaney while still on the ground. (FAC ¶¶ 81–82.)
- On December 6, 2022, GPD officers allegedly stopped Khadrah Wazwaz for suspected shoplifting and took Wazwaz "to the ground." (FAC ¶¶ 83–84.) Wazwaz allegedly did not make any threatening gestures and there was no indication she was armed. (FAC ¶ 83.) After being taken to the ground, Wazwaz allegedly alerted the GPD officers that she experienced seizures, and after this the officers allegedly stunned Wazwaz 14 times over four minutes. (FAC ¶ 86.) After the incident, a GPD spokesperson allegedly stated to the press that "force is not in reference to misdemeanor or felony cases, it's in reference to an individual's resistance." (FAC ¶ 87.)

. . .

On April 24, 2026, Plaintiff, as personal representative of the estate of Siebeck and on behalf of all statutory beneficiaries of Siebeck, sued Gonzales, Anderkin, and City of Glendale raising the following claims; (1) excessive force in violation of the Fourth Amendment under § 1983 against defendant Gonzales only; (2) unlawful seizure in violation of the Fourth Amendment under § 1983 against Gonzales only; (3) failure to render aid in violation of the Fourth Amendment under § 1983 against Gonzales and Anderkin; (4) failure to intervene in violation of the Fourth Amendment under § 1983 against Anderkin only; (5) failure to supervise in violation of the Fourth Amendment under § 1983 against Anderkin only; (6) violation of the Fourth Amendment under § 1983 against the City only; and (7) state law wrongful death claims against all Defendants. (*See* FAC at 1–22.) Defendant City of Glendale now moves to dismiss claims (6) and (7) under Federal Rules of Civil Procedure 12(b)(6). Moreover, Defendant also moves to strike paragraphs 62–87 of the FAC under Rule 12(f). Defendant also moves to dismiss count (4) (MTD at 4), but Plaintiff did not bring count (4) against Defendant, and in any case the Court denied Anderkin's motion to dismiss count (4) in a prior order (Doc. 45), so the Court declines to address it here.

## II. LEGAL STANDARD

The purpose of Rule 12(b)(6) is to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal for failure to state a claim pursuant to Rule 12(b)(6) is appropriate when the plaintiff either fails to assert a cognizable legal theory or when there is an absence of factual allegations sufficient to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When determining whether a complaint failed to state a claim, the well-pled allegations are accepted as true and construed most favorably to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim achieves facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court is not required to accept as true legal conclusions framed by the plaintiff as factual allegations. *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

### A. Count 6

In Count 6, Plaintiff brings a *Monell* claim against Defendant. To prevail on a *Monell* claim, a plaintiff must show that: (1) he suffered a constitutional injury; (2) the governmental entity had a policy or custom; (3) the policy or custom constituted a violation of the plaintiff's constitutional right; and (4) the policy or custom was the "moving force" of the constitutional injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–94 (1978). Plaintiff raises four theories of *Monell* liability. First, Plaintiff alleges Defendant "has an unofficial custom or practice of GPD officers excessively deploying serious and even deadly force on members of the public when the use of such force is not justified by any threat posed by the subject." (FAC ¶ 135.) Second, Plaintiff alleges Defendant "was deliberately indifferent to Dillon's constitutional rights when it failed to adequately supervise and discipline Officer Gonzales." (FAC ¶ 135.) Third, Plaintiff alleges Defendant "failed to adequately train officers with respect to the use of deadly force." (FAC ¶ 135.) Finally, Plaintiff alleges that the incident "evinces a widespread

practice of failing to intervene when other officers violate individual's constitutional rights" and also "evinces [Defendant] failed to adequately train, supervise, or discipline GPD officers on officers' duty to intervene." (FAC ¶ 135.) The Court will address each of these theories in turn.

**1. Plaintiff sufficiently alleges that Defendant had a custom or practice of GPD officers excessively deploying unjustified serious and deadly force.**

Defendant argues that Plaintiff fails to state a claim that Defendant had a custom or practice of GPD officers excessively deploying unjustified serious and deadly force. (MTD at 8.) When a plaintiff seeks to impose liability on a municipality pursuant to § 1983, the plaintiff must identify a policy or custom of the municipality that caused the plaintiff's injury. *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). If a plaintiff fails to show a formal policy, the plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well-settled [municipal] policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691). "Isolated or sporadic incidents" will not suffice to show a custom for which a municipality may be liable. *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (citing *Trevino*, 99 F.3d at 918). A plaintiff must also demonstrate that policymakers had actual or constructive notice of the alleged custom or practice. *Navarro v. Block*, 72 F.3d 712, 714–15 (9th Cir. 1996).

The gravamen of Defendant's argument on this point is that the circumstances surrounding the shooting of Siebeck are distinct from the prior incidents listed in the FAC and therefore the shooting of Siebeck cannot be said to be a continuation of the alleged custom purportedly embodied by the list of prior incidents. (MTD at 9.) Defendant argues that the instant case is about a misidentification and/or a long-range fatal shooting and observes that the incidents listed in the FAC are not based on similar behavior. (MTD at

9–10.) In Defendant's view, Plaintiff's allegation of a custom of excessive force is too broad to be a proper application of a *Monell* theory of liability. (MTD at 9.)

As a preliminary issue, Defendant argues that the prior incidents alleged by Plaintiff cannot prove that Defendant had notice of the alleged unconstitutional practice because they "have never been proven in court." (MTD at 9 (citing *Stickney v. City of Phoenix*, 2023 WL 2976943 (D. Ariz. Mar. 17, 2023)).) In response, Plaintiff cites to out-of-district authority articulating that incidents may be used to show a *Monell* claim even when there has not been a final judgment. (Resp. at 11 (citing *Hernandez v. Cnty. of Fresno*, 2023 WL 3177834 (E.D. Cal. May 1, 2023), *report and recommendation adopted*, 2023 WL 5951982 (E.D. Cal. Sept. 13, 2023); *Seever v. City of Modesto*, 2022 WL 17418355 (E.D. Cal. Dec. 5, 2022)).) The Court finds Defendant's authority distinguishable. In *Stickney*, the court was clear that the plaintiff alleged only the barest facts of prior cases of alleged officer conduct. *Stickney*, 2023 WL 2976943, at *40–41. Conversely, the courts in *Hernandez* and *Seever* stated that the plaintiffs may utilize pending litigation and/or settlements about similar conduct to support a *Monell* claim. *See Hernandez*, 2023 WL 3177834, at *7–8; *see also Seever*, 2022 WL 17418355, at *6. Here, Plaintiff has alleged facts sufficient to show that there was evidence GPD officers used excessive force in those instances, and Plaintiff adequately outlines the specific kind of conduct displayed by the officers. (*See* FAC ¶¶ 62–87.) The prior incidents may be considered in the *Monell* analysis.

Defendant cites no authority for the proposition that alleging a custom of excessive force is impermissible as an application of *Monell*. (*See* MTD at 9.) By contrast, Plaintiff cites to authority from this Circuit holding that alleging a custom of "excessive force" is sufficient for a *Monell* claim to survive a motion to dismiss. (Resp. at 7–8 (citing *Mitchell v. Cnty. of Contra Costa*, 600 F. Supp. 3d 1018, 1031 (N.D. Cal. 2022), *C.B. v. Moreno Valley Unified Sch. Dist.*, 544 F. Supp. 3d 973, 991 (C.D. Cal. 2021), and *McDonald v. Cnty. of Sonoma*, 506 F. Supp. 3d 969, 986 (N.D. Cal. 2020)).) In *Mitchell*, for example, the court determined the *Monell* claim survived a motion to dismiss when the plaintiff alleged several incidents the court characterized as "allegations of excessive force." 600 F.

Supp. 3d at 1030. Thus, in this Circuit, a custom of excessive force may give rise to a *Monell* claim and Plaintiff's theory of liability is not impermissibly broad.

The Court is also not moved by Defendant's arguments that the prior alleged incidents are too dissimilar to the instant matter for the purposes of alleging a *Monell* claim. Although "significant facial similarities" may suffice to show a custom or practice, Defendant construes this too narrowly. *Ochoa v. City of San Jose*, 2021 WL 7627630, at *6 (N.D. Cal. Nov. 17, 2021). In each of the incidents, Plaintiff sufficiently describes the use of allegedly excessive force by GPD officers, the same variety of conduct alleged in this case. (*See* FAC ¶¶ 62–87.) In *Mitchell*, the court determined that prior alleged uses of "excessive force" were sufficient to plead a custom or practice without requiring a more specific showing of what the force entailed. 600 F. Supp. at 1031. *Perryman v. City of Pittsburg* makes this point even clearer. 545 F. Supp. 3d 796, 801 (N.D. Cal. Feb. 10, 2021). In that case, the plaintiff alleged he was "violently tackled" by a police officer, and the court held that the plaintiff had a viable *Monell* claim when the alleged prior incidents showed "excessive force amounting to physical altercations" despite the fact that the prior incidents varied in the specific way the force was imposed. *Id.*

While Defendant cites several cases in which courts held that *Monell* claims could move forward when the prior incidents alleged were quite similar to the conduct being litigated, (*see* Rep. 3–6), Defendant's citations do not refute the idea that even when the specific details of the prior incidents do not perfectly align, *Monell* liability can arise. Here, Plaintiff alleges that GPD officers have used excessive force in multiple different interactions in different ways. (*See* FAC ¶¶ 62–87.)

Defendant makes an additional twofold argument. First, Defendant observes that Plaintiff did not allege any incidents involving excessive force for the years 2023 and 2024. (MTD at 10.) Second, Defendant argues that that the incidents alleged are too unrelated to each other and too sporadic to show a "custom" existed for the purposes of this action. (MTD at 10.) Defendant's view is that the failure to allege GPD's use of excessive force in the two years leading up to the incident in controversy means that Plaintiff cannot

establish an actionable custom. (MTD at 10–11 (citing *Trevino*, 99 F. 3d at 918).) But, as Plaintiff states, *Monell* liability can lie if there is a "longstanding practice or custom." *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (citing *Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014)). Further, "[o]lder excessive force incidents support the existence of a longstanding culture." *Ochoa*, 2021 WL 7627630, at *6. Thus, the lack of an alleged incident during 2023–24 is not enough to defeat Plaintiff's *Monell* claim.

Defendant also offers evidence of the number of calls for GPD service—of which Defendant requests the Court take judicial notice—in an attempt to show the alleged custom or practice does not exist. (MTD at 10.) Specifically, Defendant alleges that for all the hundreds of thousands of calls for service taken in 2023–24, Plaintiff does not allege any use of excessive force in that time period. (MTD at 10.) The Court may take judicial notice of "records and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (citations omitted). However, the Court may not take judicial notice of information that "is subject to varying interpretations." *Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988, 1000 (9th Cir. 2018) (quoting *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011)). Defendant interprets the call data to mean that excessive force is not utilized often by GPD, but it is possible to interpret the data to show for example that the number of calls has gone down, and with it the number of excessive force incidents. (*See* MTD at 10.) What happened in 2023–24 is an issue for discovery. *See Khoja*, 899 F.3d at 998. For these reasons, the Court declines to take judicial notice of the number of calls for GPD service in 2023–24.

Finally, in the Reply, Defendant asserts that Plaintiff must show a pattern of "lethal, or deadly" force to prevail on the *Monell* claim. (Rep. at 5.) Specifically, Defendant points to paragraph 139 of the FAC to suggest that Plaintiff concedes that his claim is for a failure to train in use of *lethal force*. (Rep. at 5.) However, paragraph 135 of the FAC clearly outlines that the relevant *Monell* theory is that "the City has an unofficial custom or practice

of GPD officers excessively deploying serious and even deadly force." (FAC ¶ 135.) This language makes it clear that the custom alleged is not exclusively related to the use of lethal force. In sum, Plaintiff has sufficiently pled a custom or practice of excessively deploying unjustified serious and even deadly force.

**2. Plaintiff sufficiently alleges that Defendant failed to train, supervise, and discipline its employees on the appropriate use of force.**

A plaintiff can establish municipal liability by proving that the alleged constitutional violation was caused by the municipality's failure to adequately train its employees. *City of Canton v. Harris*, 489 U.S. at 388–91 (1989). To allege a failure to train, the plaintiff must plead facts supporting a reasonable inference of a constitutional violation, "a municipal training policy that amounts to deliberate indifference to constitutional rights," and that the constitutional injury in question would not have occurred if municipal employees were properly trained. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021) A city is deemed deliberately indifferent "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and nevertheless choose to retain that program. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). This ordinarily requires showing a "pattern of similar constitutional violations by untrained employees." *Id.* at 62 (citation omitted). A failure to supervise claim is actionable under § 1983 "only in those situations in which there is a history of widespread abuse." *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982).

Defendant argues that Plaintiff's claims about supervision, discipline, and training fail because Plaintiff has not alleged facts to show that Defendant had notice of constitutional deficiencies and because Plaintiff does not allege what additional supervision, discipline, or training was omitted during the nine prior incidents. (MTD at 12.)

First, Defendant's contention that Plaintiff must identify in the FAC what specific training would have prevented the injury is unsupported by authority. (MTD at 12.) At this

stage, the standard is whether the facts of the shooting alleged by Plaintiff support the reasonable inference that if municipal employees were properly trained, the injury would not have occurred. *See Benavidez*, 993 F.3d at 1153–54. The Court finds it is reasonable to infer from the facts alleged that if municipal employees had received proper training, Siebeck would not have been injured in the manner he was.

Moreover, according to the allegations, Defendant was on notice of the unconstitutional deficiency in training. The FAC alleges notice through, *inter alia*, criminal filings, a guilty plea by an officer, and an FBI probe into the police department. (*See* FAC ¶¶ 62–86, 137.) Defendant again argues that the prior incidents could not have put the City on notice because they are insufficiently similar to the incident at issue. (MTD at 12; Rep. at 8.) But, as discussed *supra*, Plaintiff alleges a pattern of uses of excessive serious and lethal force (FAC ¶¶ 138, 142), and the alleged prior incidents fall into these categories. (*See* FAC ¶¶ 62–86.)

This case is thus similar to *Hernandez* in this respect, where the court found that five alleged incidents of a similar kind supported a failure to train claim. *Hernandez*, 2023 WL 3177834, at *7. Plaintiff's allegation that an FBI probe was initiated sufficiently shows that city policymakers either knew or "should have known" that municipal training "has failed to prevent tortious conduct by employees." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997). Plaintiff has thus alleged sufficient facts to support the claim that Defendant failed to train, supervise, and discipline its employees on the appropriate use of force.

**3. Plaintiff does not allege facts sufficient to establish that Defendant had a policy or custom of failing to intervene or failed to train, supervise, and discipline GPD officers on an officer's duty to intervene.**

Defendant next argues that Plaintiff has not alleged facts sufficient to support the theory that Defendant failed to adequately train, supervise, or discipline officers on the duty to intervene when other officers violate an individual's constitutional rights. (MTD at 13.) In general, a singular instance of alleged illegal conduct will not be actionable under § 1983. *See Fed'n of Afr. Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1216 (9th Cir.

1996), *overruled on other grounds by Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023). Plaintiff, however, argues that the allegedly uniform failure to intervene by the supervisor and every other officer present during the shooting of Siebeck gives rise to the plausible inference that "the department does not expect its officers or supervisors to intervene, does not train them to, and does not discipline them when they fail to." (Resp. at 14–15.)

Defendant's position is that a single instance of allegedly unlawful conduct does not give rise to a § 1983 claim. (MTD at 13) An allegation that multiple officers were present at the scene when an officer used excessive force is not by itself sufficient to state a failure to intervene claim. *See, e.g.*, *Warren v. Penzone*, 2024 WL 2246257 (D. Ariz. May 17, 2024). In response, Plaintiff posits that a single incident can be "so flagrant" that it supports an inference of deficient supervision. (Resp. at 14 (citing *Bowen*, 669 F.2d at 989).) Plaintiff cites *Michael v. County of Nassau* to support the position that the presence of multiple officers supports an inference of a failure to train on intervention. (Resp. at 15). Critically, Plaintiff omits the other factors that the *Michael* court considered in concluding that the plaintiff's failure to train claim would survive a motion to dismiss, including "the alleged involvement of numerous officers, the mocking Plaintiff allegedly received when invoking his right to counsel, and the headquarters location." *Michael v. Cnty. of Nassau*, 2010 WL 3237143, at *4 (E.D.N.Y. Aug. 11, 2010). Indeed, in *Michael*, the plaintiff alleged he was beaten in a public hallway in a police headquarters and mocked by several officers. *Id.* The court reasoned that the fact that this all occurred in a police headquarters suggested that the officers did not fear supervisors disciplining them for the misconduct, which went towards the court's finding that a custom or policy of misconduct was sufficiently alleged. *Id.* The location of the alleged misconduct in *Michael* distinguishes that case from the instant matter.

The other authorities cited by Plaintiff are also distinguishable. In *Gutierrez-Valencia*, the court was considering the conduct of several different nurses over a certain time period, not the collective failure to intervene in a singular incident. *Gutierrez-Valencia*

*v. Shinn*, 2026 WL 775617, at *20 (D. Ariz. March 19, 2026). And in *Matthews*, the court considered five different instances of similar conduct in which multiple officers were involved. *Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 37–38 (D.D.C. 2010).

Plaintiff attempts to revitalize his claim on this front by couching the alleged prior incidents of excessive force as also being evidence of failure to intervene. (Resp. at 15 (citing FAC ¶¶ 66–86).) But the incidents alleged in the referenced paragraphs do not identify an officer or officers who had an opportunity to intervene, nor does the FAC allege facts sufficient to show that any officer had a reasonable opportunity to intervene. (*See* FAC ¶¶ 66–86.)

In sum, Plaintiff has not shown that the single incident alleged is sufficient to show a failure to train on the duty to intervene, and the prior incidents of excessive force by themselves do not support this particular failure to train claim. Plaintiff's allegation of a practice of failing to intervene fails for a similar reason. Plaintiff does not allege sufficient facts to show that other officers in the prior incidents had an opportunity to intervene, and Plaintiff therefore does not adequately allege a "longstanding practice" of failing to intervene. *See Ulrich*, 308 F.3d at 984. The Court will thus dismiss Plaintiff's claim for Defendant's failure to train, supervise, and discipline GPD officers on an officer's duty to intervene and the claim of a custom or practice of failing to intervene.

**4. Plaintiff alleges facts sufficient to establish that Defendant failed to supervise and discipline Gonzales.**

In the FAC, Plaintiff alleges that Defendant failed to supervise and discipline Gonzales, which allegedly resulted in Gonzales shooting and killing Siebeck. (FAC ¶ 135.) The FAC specifically alleges that Gonzales had an "abnormally high number of 'responsive to resistance' events"—that is, a high number of encounters in which he used force—and the GPD never "meaningfully disciplined" him. (FAC ¶ 137.) The GPD allegedly sustained a violation of GPD policy against Gonzales for discharging his firearm, but he apparently faced no suspension for this violation. (FAC ¶ 137.)

. . .

Defendant argues that the conduct alleged does not plausibly show that Defendant had actual knowledge that Gonzales was insufficiently supervised or disciplined. (MTD at 13.) The thrust of Defendant's position here is that the singular allegation of Gonzales's prior firearm violation is insufficient to allege a *Monell* claim. (MTD at 13.) Defendant contends that the prior violation of a firearm policy is not relevant to Gonzales's use of deadly force in the instant matter. (Rep. at 8.)

In *Jackson v. Barnes*, cited by Defendant, the court held that the plaintiff's *Monell* claims should have survived a motion to dismiss when the plaintiff alleged that a single officer had a pattern of not reading *Miranda* warnings. 749 F.3d 755, 763 (9th Cir. 2014). In the instant case, Plaintiff alleges a high number of "response to resistance" events and a firearms policy violation. (FAC ¶ 137.) These allegations describe a sufficiently similar kind of excessive force and inappropriate weapons use to that which Gonzales is alleged to have engaged in. (FAC ¶¶ 31–39.) Defendant's citation to *Warren v. Penzone* is also unavailing. In that case, the court observed dismissal of a *Monell* claim was proper when the complaint only alleged that incidents provided notice of a training policy but did not allege facts showing that the incidents were in line with the particular kind of practice or custom being litigated. *Warren*, 2024 WL 2246257, at *16–17 (D. Ariz. May 17, 2024). Here, Plaintiff's allegation that Gonzales had an abnormally high number of response to resistance events fulfills the requirement that a plaintiff plead some facts showing a pattern of conduct similar to the alleged conduct. At this stage, it is facially plausible that Defendant had knowledge of a failure to supervise and discipline Gonzales, and Plaintiff's claim survives Defendant's Motion to Dismiss.

**B. Count 7**

In Count 7, Plaintiff alleges a wrongful death claim against Defendant under Arizona's wrongful death statute. (FAC ¶¶ 146–68.) The statute permits a plaintiff to recover damages when the death of a person is caused by a defendant's "wrongful act, neglect, or default" that is of a nature that, if it did not cause the death, it would have

entitled the injured person to recover damages. A.R.S. § 12-611. Defendant articulates two theories to dismiss Count 7, and the Court considers these in turn.

**1. Plaintiff sufficiently pleads a wrongful death claim based on the failure to train, supervise, or discipline.**

Defendant first argues that the Court should dismiss Count 7 to the extent it is based on a failure to train, supervise, or discipline. (MTD at 14.) Generally, Arizona law will not hold an employer liable for the unforeseeable act of its employee. *Pruitt v. Pavelin*, 685 P.2d 1347, 1354 (Ariz. Ct. App. 1984). Moreover, Arizona law requires that a plaintiff asserting a negligent training claim show that the defendant's training was negligent and that this negligent training proximately caused the plaintiff's injury. *Inmon v. Crane Rental Servs., Inc.*, 67 P.3d 726, 733 (Ariz. Ct. App. 2003), *disapproved of on a different ground*, *Tarron v. Bowen Mach. & Fabricating*, 235 P.3d 1030 (Ariz. 2010).

Defendant's sole argument on this point is that the wrongful death claim fails because Defendant had no notice that its training, supervision, or discipline was deficient. (MTD at 14.) The Court addressed this issue *supra*. Plaintiff has pled sufficient facts showing Defendant was on notice of its failure to train, supervise, or discipline, and Plaintiff's claim thus survives.

**2. Plaintiff sufficiently pleads facts showing Defendant may be held vicariously liable for the shooting of Siebeck.**

Second, Defendant argues that it cannot be held vicariously liable for the actions of the on-scene officers and Anderkin. (MTD at 15.) An employer is vicariously liable for "negligent work-related actions of its employees." *Engler v. Gulf Interstate Eng'g, Inc.*, 280 P.3d 599, 601 (Ariz. 2012). Defendant's sole contention is that it cannot be held vicariously liable for the actions of Anderkin and the other officers because the allegations of their failure to supervise and intervene do not establish its gross negligence with regard to the failure to supervise or intervene with Gonzales. (MTD at 15.) In Defendant's view, the officers had no opportunity to intervene with Gonzales.

. . .

Plaintiffs have sufficiently alleged that the officers were grossly negligent. As stated in a prior order (Doc. 45), Plaintiffs have alleged facts that could plausibly show that Anderkin had a realistic opportunity to intervene before Gonzales initiated his second volley. As a result, Plaintiffs have alleged facts sufficient to show that it is at least plausible that Anderkin or the other officers were negligent in their failure to intervene when they had an opportunity to do so. For these reasons, Count 7 survives.

**C. Motion to Strike**

Defendant seeks to strike the "History of Excessive Force by GPD" section of the FAC pursuant to Rule 12(f). (MTD at 15–16.) The Rule permits the Court to strike language in a pleading that is "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). For the purposes of Rule 12(f), "matter is immaterial or impertinent when it is not relevant to the resolution of the issue at hand." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 224 F.R.D. 261, 263 (D.D.C. 2004) (citing *LaRouche v. U.S. Dep't of the Treasury,* 2000 WL 805214, at *15 (D.D.C. Mar. 31, 2000)). Matter is considered scandalous when it "generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Id.* (citation omitted).

Defendant's primary argument is that the incidents listed in the "History of Excessive Force by GPD" section of the FAC are not relevant because they cannot support the *Monell* claims of Plaintiff. (MTD at 16.) As discussed *supra*, the Court disagrees. The incidents listed in that section of the Complaint form the basis for the *Monell* claim at issue and as such, are highly relevant to the resolution of the instant matter. (*See* Rep. at 17.)

Defendant further argues that the allegations only served to prejudice Defendant. (MTD at 16.) However, Defendant does not articulate how it is prejudiced by the alleged incidents. (*See* MTD at 16; Rep. at 11.) Further, even if the incidents "cast a derogatory light" on Defendant, this is not improper for the purposes of Rule 12(f) because the allegations form the basis of a claim in this matter. *Barba v. Seung Heun Lee*, 2009 WL

8747368, at *30 (D. Ariz. Nov. 4, 2009). Accordingly, the Court declines to strike paragraphs 62–87 of the FAC.

**D. Leave to Amend**

In the Response, Plaintiff requests leave to amend in the event the Court finds any claim is insufficiently pled. (Resp. at 17.) The Court should "give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts in the Ninth Circuit must grant leave to amend upon dismissing a claim unless there are no additional facts that could be pled that would cure any deficiencies in the claim. *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995)). Here, the deficiencies in Plaintiff's claims for a custom of failing to intervene and for failure to train, supervise, and discipline GPD officers on an officer's duty to intervene could be cured by alleging additional facts. If Plaintiff can allege facts showing that in the prior incidents alleged there were specific GPD participants that had a realistic opportunity to intervene, it may be possible to sufficiently plead these claims regarding a practice of failing to intervene and for failure to train, supervise, and discipline. Accordingly, leave to amend is proper.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant City of Glendale's Partial Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Strike (Doc. 29). Count 6 of the First Amended Complaint (Doc. 18) is dismissed only to the extent it relies on Defendant's alleged failure to train, supervise, and discipline GPD officers on their duty to intervene and to the extent it relies on GPD officers' alleged custom or practice of failing to intervene. Defendant's Motion to Dismiss is denied in all other respects, and Defendant's Motion to Strike is denied.

**IT IS FURTHER ORDERED** granting Plaintiff's request for leave to amend that portion of Count 6 dismissed by the Court. Plaintiff may file a Second Amended Complaint by **November 20, 2026**. If Plaintiff declines to file a Second Amended Complaint by that

date, Defendants shall file an answer to the First Amended Complaint by **December 4, 2026**. The Court will set a Rule 16 Scheduling Conference upon the filing of the remaining Answers.

Dated this 6th day of November, 2026.

Honorable John J. Tuchi
United States District Judge